The opinion of the court was delivered by
Tilghman, C. J.
This is an ejectmént for a tract of land in Chester County, brought by John Jourdan, the defendant in error, who was plaintiff below, against Hugh Jourdan. On the trial in the Court of Common Pleas, the defendant offered sundry matters, both written and parol, in evidence, which were rejected by the court, whereupon the counsel for the defendant excepted to their opinion;
1st. The first evidence rejected, was a deed from John Jour-dan, Senr., and Sarah his wife, to their son Hugh Jourdan, the defendant, for the land in dispute; which was the estate of the said Sarah. This deed was acknowledged by both the grantors, before James M. Gibbons, a Justice of the Peace of Chester County, as appeared by his certificate; but it did not appear that the wife was examined separate, and apart from her husband, and that was the reason of its rejection.
As to the acknowledgment of deeds by married women, the principle now firmly established is, that the requisites of the act of assembly, by which the mode of conveyance by femes covert is prescribed, must appear to have been substantially complied with, on the face of the certificate, made by the magistrate by whom the acknowledgment was taken. Watson’s Lee v. Bailey, is the leading case, 1 Bin. 470; since which have beenthé cases of M'Intire v. Ward, 5 Bin. 296, Shaller v. Brand, 6 Bin. 435, Evans v. The Commonwealth, 4 S. & R. 373, Watson v. Moreen, 6 S. & R. 49, and Hopkins v. Birchatt, 6 S. & R, 143. Arid in conformity with this principle, the counsel for the defendant has contended, that it substantially appears, the wife was examined separate and apart from her husband, becáuse it is' certified by the magistrate, that she voluntarily consented, which she could not do, if her husband were present; because, then, it would be presumed, that she was under coercion. This argument is too refined. A separate examination is essential, and ought sufficiently to appear. In the present instance, the magistrate certifies, that the feme vo- *274 luniarily consented. .We are to understand by that, that being asked by the magistrate, whether she made her acknowledgment of her own free will, without any coercion or compulsion of her husband, she answered in the affirmative. Nothing more can be fairly implied. Whether this examination was in the presence of the husband, or not, does not appear, nor is there any ground for inference on that point. It might in truth be, that she freely consented, though her husband was present. But that will not satisfy the law. Examine the worpan how you will, it is impossible to ascertain with certainty, whether she gives her free consent; her word must be taken for that. She may in fact, be under terror, though she be examined in the absence of her husband. But there is a better chance for her speaking her real sentiments, in his absence than in his presence. And it is difficult for the law to protect her further, than by giving her an opportunity of disclosing her mind to the magistrate, out of the presence of her husband.The act, therefore, directs this examination of the wife to be separate and apart from the husband; and in this the magistrate has no discretion. He has no right to-say, that the consent was voluntary, unless the husband and wife were separate, and that they were separate must appear on the face of the certificate, and not otherwise. I am, therefore, of opinion, that thexertificate of acknowledgment 'was defective. But it was attempted to supply this defect, by the parol, evidence of the magistrate, before whom the acknowledgment was made. This evidence was also rejected, and in my opinion, with great propriety. That point was expressly decided in the case of Watson’s Lessee v. Bailey, 1 Bin. 470. In that case, the certificate of the magistrate was defective, and in order to supply the defect, parol evidence was offered, and refused by the court. There would be no certainty in titles, if this kind of evidence were permitted. The deed in question, was acknowledged 31st December, 1802; and after the lapse of twenty years, the magistrate is called upon to declare what took place at the time of the acknowledgment. If it were a new point, I should say, that the evidence ought not to be admitted. The law directs the magistrate to make his certificate in writing, and he has made it. To that the world is to look, and to nothing else. But the point is not new. The decision in Watson & Bailey, has been recognized in other cases. There can be no hesitation, therefore, in saying, that in the present instance, the parol evidence was inadmissible. But there was another point of view under which the same deed was again offered as evidence. It contains a warranty, by John Jourdan the father, against himself and his own, and his wife’s heirs, and the defendant offered to' prove, that other lands descended in fee simple from the said John Jourdan the father, to his son John, the plaintiff, more than equal in value, to the premises claimed in this suit. This was a collateral warranty, because the land being the estate of the wife of the warrantor, it was impossible that his child could in- *275 bent it from him. A collateral wari’anty, with assets, is a bar to the heir of the warrantor — -but there is a decisive objection to a bar in this case. The warranty of John Jourdan the father, did not descend upon his son John, the plaintiff, but upon Hugh, the defendant, who was the eldest son and heir at common law. Our act of assembly directing the descent of the real estates of intestates, makes no mention of warranties, and in no manner directs the mode of their descent. That act operates only on such estates as the intestate' had power to dispose of. It has no effect on estates tail, nor on estates held in trust by the intestate. Such has been the uniform and settled construction. The descent of warranties then, is left to the common law, and the authorities are express, that a warranty can descend on no other than the heir at common law; although the land of the warrantor may descend to all the sons equally, as is the ease with lands held in Gavelkindor to the youngest son only, where the lands are held in Borough English. In 1 Inst. 12, it is said by Lord Coke, “ that a warranty shall not go with tenements to which it is annexed, to any special heir; but always to the heir at common law.” And in Littleton Sect. 735, the case is put, of tenant in tail, seized of tenements in Borough English, who discontinues the tail with warranty, and has issue, two sons, and dies seised of other tenements, in the same Borough, in fee simple, to the value, or more, of the lands entailed; yet the younger son shall not be bound by the warranty of his father, although assets descended to him in.fee simple.from his father, according to the custom, because the warranty des’cended on the elder brother, and npt upon the younger. Then Littleton adds, “and in the same manner it is of collateral warranty made of such tenements; where the warranty descends upon the eldest son, it shall not bar the youngest son.” In Litt. Sect. 736, it is said, that in ease of Gavelkind lands, which are dividable between all the sons, the warranty of the father descends upon the eldest son only. As to the case of Eshelman v. Hoke, decided by this court, and reported in 2 Yeates, 509, it is to be remarked, that the only point to which the attention of the court was drawn, was whether the statute of 4 & 5 Ann. Ch. 16, by which all collateral warranties are void, unless made by one who is seised qí an estate of inheritance in possession, had been extended to Pennsylvania. The court held, that it had not been extended, and therefore, a collateral warranty with assets was a bar, though the warranty was riot made by a person who was seised of an estate of inheritance. Had the question been presented to the court, whether a warranty can descend on any other than the heir at the common law-, I presume there can be no doubt, that it would have been answered in the negative.
As it is now settled, that the statute of Jinn, does not extend to this state, possibly the legislature may think it prudent to make some provision, whereby all injustice and inconvenience, from the effect of warranties, whether lineal or collateral, may be prevented. The subject certainly deserves consideration. For although the *276 warrantee and his heirs and assigns, may have remedy by action on the covenant of warranty, in cases where the land is recovered from him by one of the children of the warrantor, yet the remedy is uncertain (by way of damages,) and may bé inadequate. The law of warranty has fallen very much into disuse, and consequently the knowledge of it is difficult. The remedy by voucher is unknown, (except in common recoveries,) because our actions for recovery of land have been confined almost exclusively to ejectment, in which voucher does not lie. As for the writ of warrantia chart, I do not know that it has ever been resorted to. And the situation of the warrantee is embarrassed by our law of descent, which divides the real estate of thé warrantor among all his children, while the warranty is left to descend at- the common law, on the eldest son only. In such a situation it is very desirable that the whole law of warranty should be simplified, and adopted to common understanding, and to our present mode of conveyancing, which is altogether different from that which, prevailed when warranties were first introduced.
The next question which arose on the trial of this cause was, oft. parol evidence. The defendant offered to prove, that the plaintiff’s mother, under whom he claims, after the death of her husband, John Jourdan, delivered and ratified the deed of 31st December, 1802, which-had been executed by her and her husband, but had no effect as to her, because not acknowledged according to law. This evidence the court rejected, and their opinion may be accounted for, by the hurry of a jury trial, in which many points were to be decided in a short time.' Certain it is, however, that the evidence ought to have been admitted. The first execution of the deed by Mrs. Jourdan, was a nullity, because the terms of the act of assembly had not been complied with, by the magistrate who took her acknowledgment. There was no objection, therefore, to her delivering the deed, after the death of her husband, and such delivery might be well proved by parol evidence. There was error, therefore, in the rejection of that evidence. But besides this, the defendant offered to prove a variety of circumstances, from which it might be inferred, (in case the direct proof should fall short,) that Mrs. Jourdan had delivered this deed, after the death of her husband. This evidence was also rejected, and in my opinion improperly. It was decided in Carter’s lessee v. Straphan, Cowp. 201, that the deed of a married woman was void, but might be made good by delivery only after the death of her husband; also, that delivery might be presumed, from circumstances. Undoubtedly the circumstances should be very strong, from which a delivery should be presumed; but it was proper that they should be heard.
Last of all, the defendant offered in evidence, a variety of other matters mentioned in the bill of exceptions, from which it might appear, that- in the life of John Jourdan, the father, and his wife, and about the time of their executing the deed for the lands in dispute, to Hugh Jourdan the defendant; a family arrangement had *277 been made, to which the father, mother, and all the children were parties, by which it was agreed, that the land of the mother should go, after her death, and her husband’s, to the defendant; and the land of the father to the other children; and that in consequence of this agreement, the defendant had been precluded from any share of his father’s estate. This evidence was rejected, but I think it should have been received. It is unnecessary, and indeed, would be improper, to give an opinion at present, on the equity of the defendant’s case. Suffice it to say, that the case appears to be a hard one, if he loses his mother’s land, and he ought to have been permitted to show all the circumstances of the family agreement, which he undertook to. prove. We may easily conceive, that a case might possibly have been made out, in which the equity would have been irresistible. He may have released to the other members of the family, all his right to his father’s land, on ¿he faith of their consent to his enjoying the land of his mother. . All, however, that need be. said at present, is, that his evidence should have been heard; and in that stage of the cause, I am of opinion, that the deed from Jourdan, the father, and his wife, to the defendant, might have been' evidence, as a component part of the family agreement; though not as a conveyance passing the' estate of the wife.
I am of opinion, upon the whole, that the judgment should be reversed, and a venire de novo awarded.
Judgment reversed, and a venire de novo awarded.